P-Send "O"

FILED
NOV 8 2005
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

RANDY ALLEN MYERS,
Petitioner,
v.
JEANNE S. WOODFORD, Warden,
Respondent.

Case No. CV 05-00383-MMM (MLG)

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**I. Factual and Procedural Background**

On May 5, 2000, Los Angeles County Deputy Sheriff Deputies Gilbert Arakawa and Brian Bishop conducted a parole search of a trailer in the City of Whittier, California, which was the residence of Petitioner Randy Allen Myers. Petitioner and Petitioner's uncle, Charles Emmette Boles lived in the trailer. When the deputies arrived, they saw Petitioner standing on the porch of the trailer. After confirming Petitioner was still on parole, the deputies placed Petitioner in the patrol car while they conducted a lawful search of the trailer.

\\

DOCKETED ON CM
NOV - 8 2005
BY 040

(27)

The trailer had two bedrooms, one at the southwest end and one at the southeast end, a bathroom, a living room, and a kitchen. The southeast bedroom belonged to Petitioner. In Petitioner's bedroom, the deputies found two glass pipes, mail addressed to Petitioner, a computer, Petitioner's clothing, hydrogen peroxide, duct tape, a wallet containing Myer's California drivers license, and business cards for Chem Lab Supplies and Carter's Horseman's Corral, Inc. The deputies also discovered a set of keys in Petitioner's bedroom. With one of the keys, Deputy Arakawa was able to open one of the two sheds that were next to the trailer.

When Deputy Arakawa opened the door to the shed, he saw various containers on a shelf. However, he was forced to close the door due to the overpowering odor that came from the shed. In a subsequent search, a can labeled "Acetone" was found in the shed, as well as a trash can with heavily stained tubing duct-taped together, and a one-gallon jug containing a bi-layered liquid which was determined to be methamphetamine in hydrochloric acid.

In the kitchen, authorities found approximately 15 to 20 blister packs of over-the-counter cold/sinus medicines. A tablet from one blister pack was tested and determined to contain pseudoephedrine. The other tablets were not tested.

On a covered porch directly off of the living room, a deputy found a metal suitcase containing tubing, fitted with adapters and coated with a red substance later determined to be phosphorus, as well as a propane cylinder with an attachment. Phosgene gas fumes, a by-product of methamphetamine manufacture, emanated from the suitcase when it was opened. Criminalist Chien-Shing testified that during the methamphetamine manufacturing process, extracted ephedrine is combined

with iodine, red phosphorus and water, and that tubing is often used in this step to help trap the toxic fumes generated in the chemical process.

The deputies found that the southwest bedroom was locked. They broke through with a small battering ram. No one was inside, but the officers found bedding, clothing, and personal effects in the room. Also inside the bedroom was a box labeled "Junior's toy box,"[1] containing a coffee pot and a coffee filter that contained approximately 0.2 grams of powder containing methamphetamine, as well as residual hydriodic acid and a powder consistent with red phosphorous. On a shelf above the bed were two envelopes, one addressed to Boles, and one addressed to Boles and "Randy." Authorities also found two dental receipts in Boles' name; Boles' expired California drivers license listing the Whittier trailer park address; an hardware store receipt for acetone, a copy of "The Condensed Chemical Dictionary," and a purple plastic gram scale with red, white and black residue.

Both Petitioner and Boles were charged with manufacturing methamphetamine (Health and Safety Code § 11379.6(a)) and possession of pseudoephedrine with the intent to manufacture methamphetamine (Health and Safety Code § 11383(c)(1)). They were tried jointly.

At trial, Boles presented evidence aimed at establishing that he had ceased living at the trailer park prior to the search. Petitioner testified on his own behalf. Petitioner testified that he had been living in the trailer but was in the process of moving out. (TR at

---

[1]This may refer to Charles Emmette Boles, since his father, who lived at the trailer until his death, was referred to as Charles Emmette Boles Sr.

1230). He testified that he stayed in the southeast bedroom, and Boles stayed in the locked southwest bedroom. (TR at 1231). Petitioner also testified that others lived in the trailer periodically, including his deceased grandfather's caretaker and one of Boles' friends named "Russell." He offered innocent explanations for much of the evidence presented by the prosecution.[2] He testified that he did not own a key ring like that described by the officers, and had never possessed keys to the shed or the southwest bedroom. (TR at 1224). Petitioner also testified that he had not opened the shed in which the officers found methamphetamine since early 2000. (TR at 1226).

In addition to the evidence recited above, the prosecution introduced evidence showing that on February 18, 2000, Petitioner purchased one pint of hypophosphorous acid and two flasks from Chem Lab Supplies, both items commonly used in the methamphetamine manufacturing process.

On May 9, 2001, following a jury trial, both men were found guilty of manufacturing methamphetamine and possession of pseudoephedrine with the intent to manufacture methamphetamine.[3] Petitioner was also found to have been convicted of two previous, serious felony offenses.

---

[2]For example, Petitioner testified that he had purchased iodine crystals at the horse supply store, and two flasks and hypophosphorous acid at Chem Lab Supplies, for a friend for whom he was doing legal work. (TR at 1228-30). He possessed the duct tape to reinforce the boxes he was packing for his imminent move, and kept the hydrogen peroxide to clean cysts on his legs. (TR at 1233). The glass methamphetamine pipes belonged to Alice Collins, Petitioner's grandfather's caretaker; Petitioner had placed them in his room, intending to dispose of them, shortly before police arrived. The pills had belonged to his grandfather. Some of the pills did not contain pseudoephedrine.

[3] Boles was also charged with and convicted of possession of methamphetamine, but this conviction was overturned by the California Court of Appeal on double jeopardy grounds. (*People v. Myers*, 2002 WL 1648407 (July 24, 2002) (unpublished)).

Petitioner was sentenced to sixteen years and eight months in prison.

Petitioner appealed his judgment of conviction to the California Court of Appeal. On July 24, 2002, the California Court of Appeal affirmed the conviction and the sentence. (*People v. Myers*, 2002 WL 1648407 (July 24, 2002) (unpublished)). On September 11, 2003, Petitioner filed a habeas corpus petition in the California Court of Appeal. The petition was denied on October 23, 2003. On or around January 13, 2004, Petitioner filed a habeas corpus petition in the California Supreme Court, which was denied on February 4, 2004. The instant petition for writ of habeas corpus was filed on January 18, 2005. On May 5, 2005, Respondent filed an Answer to Petition's writ of habeas corpus. On July 18, 2005, Petitioner filed a Traverse to Respondent's Answer.

Petitioner alleges four Constitutional violations in support of his request for habeas corpus relief: (1) There was insufficient evidence to support his conviction; (2) the trial court failed to conduct an adequate *Marsden*[4] hearing, allowing Petitioner's trial lawyer to continue his representation despite a conflict of interest, which violated Petitioner's Sixth Amendment right to effective assistance of counsel; (3) there was ineffective assistance of counsel at trial; and (4) Petitioner's conviction of both the "lesser included" and substantive offenses violated the Fifth Amendment prohibition against double jeopardy.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996

---

[4] *People v. Marsden*, 2 Cal. 3d 118 (1970).

("AEDPA"), 28 U.S.C. § 2254(d)(1), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was decided on the merits in state court only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the ruling was "based on an unreasonable determination of the facts in light of the evidence presented."

A state court decision is "contrary to" clearly established federal law if the state court failed to apply the correct controlling authority from the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The Supreme Court has explained that a decision is contrary to clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at 405-06). A state court need not cite or even be aware of Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (citing *Packer*, 537 U.S. at 7).

A state court decision involves an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case. *Williams*, 529 U.S. at 407-08, 413. Under this standard, a habeas court may not issue the writ simply because it concludes "in its independent judgment" that the state court decision is incorrect or

erroneous. *Williams*, 529 U.S. at 410, 412; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002). The reviewing court must find that the state court's application of clearly established law was objectively unreasonable. *Williams*, 529 U.S. at 409.

The California Supreme Court denied review in this case without comment. When the California Supreme Court has summarily denied a claim, without giving a rationale, this is considered a denial "on the merits," and is presumed to rest on grounds articulated by a lower court in its written opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-806 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Thus, a reviewing court may "look through" the unexplained summary denial to a lower state court's reasoned decision. Here, the last reasoned decision by a state court was the opinion of the California Court of Appeal of July 24, 2002.

**III. Analysis**

**A. There Was Sufficient Evidence to Sustain Conviction**

Petitioner first contends that there was insufficient evidence to sustain his convictions for manufacturing methamphetamine and possessing ephedrine with the intent to manufacture methamphetamine. Respondent argues that the California Court of Appeal reasonably rejected Petitioner's claim. Petitioner's claim is meritless.

Petitioner presents a potpourri of alleged examples of the insufficiency of the evidence against him. Specifically, Petitioner contends that no evidence was presented that shows that he exercised any control over the locked bedroom that contained methamphetamine and manufacturing materials, or over the outside shed and its methamphetamine manufacturing materials. He insists that his purchase

of iodine crystals, flasks, and hypophosphorus acid has an innocent explanation and is not sufficient to show that he committed an act involving chemical extraction or synthesis. Likewise, Petitioner asserts that the duct tape and the hydrogen peroxide had no probative value because they are innocuous items that most people own. Petitioner further argues that because there was not enough pseudoephedrine at the trailer with which to produce a batch of methamphetamine, the prosecution's evidence is necessarily rendered insufficient. In sum, because of these various deficiencies, Petitioner contends that there is no evidence demonstrating that he committed an act involving chemical extraction or synthesis as required by Health and Safety Code Section 11379.6(a).

A conviction based on insufficient evidence violates due process. *In re Winship*, 397 U.S. 358, 364 (1970). Relief is required if, based on the evidence produced at trial, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Turner v. Calderon*, 281 F.3d 851, 881-82 (9th Cir. 2002). A reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence and draw reasonable inferences from proven facts. *Jackson*, 443 U.S. at 319. Moreover, on habeas review the court must apply the *Jackson* standard "with an additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). The court must ask "whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case." *Id.*

To determine whether the state court's application of the *Jackson* standard was unreasonable, a federal habeas court looks to state law to

determine what evidence is needed to support a conviction on the crime charged. *Jackson*, 443 U.S. at 324 n.16; *Panther v. Hames*, 991 F.2d 576, 581 (9th Cir. 1993).

Petitioner was found guilty of manufacturing methamphetamine in violation of Health & Saf. Code § 11379.6(a) and possession of pseudoephedrine with the intent to manufacture methamphetamine in violation of Health & Saf. Code § 11383(c)(1). In order to prove the § 11379.6 manufacturing offense, the prosecution was required to demonstrate that Petitioner (1) performed an act of chemical extraction or synthesis which would result in producing methamphetamine and (2) had knowledge such was being made. *People v. Coria*, 21 Cal.4th 868, 880 (1999). In order to prove the § 11383 possession with intent to manufacture offense, the prosecution needed to show (1) that Petitioner possessed a substance containing pseudoephedrine and (2) that Petitioner had the specific intent to manufacture methamphetamine. *People v. Perez*, 35 Cal.4th 1219, 1228 (2005) *citing* CALJIC No. 12.09.4.

The record in this case contains compelling circumstantial evidence that Petitioner possessed pseudoephedrine pills with the intent to manufacture methamphetamine. As the California Court of Appeal noted, methamphetamine in a solution of hydrochloric acid was discovered in the shed. Phosgene gas, a by-product of methamphetamine production, came from the suitcase found on the porch. Numerous items commonly used in the production of methamphetamine were discovered on the premises, including muriatic acid, tubing, adapters, red residue, glassware, hydrogen peroxide, tablets containing pseudoephedrine, partially empty cans of Coleman fuel, and acetone. The Court of Appeal further noted that Myers apparently had access to all areas of the

premises, except Boles' locked bedroom. In Myers' bedroom, authorities found a key to the shed where the methamphetamine manufacturing materials were discovered. Myers' wallet contained business cards for Chem Lab Supplies and a horse supply store, both retailers of items used in methamphetamine manufacture. The evidence, considered cumulatively, was sufficient to allow a rational trier of fact to find beyond a reasonable doubt that Myers manufactured methamphetamine and had possession of pseudoephedrine with the intent to manufacture methamphetamine. In doing so, the jury was able to evaluate and reject Petitioner's innocent explanations for the evidence through Petitioner's own testimony at trial. The decision of the California courts was not an unreasonable application of *Jackson*. No relief is warranted.

**B. Petitioner Was Not Denied His Right To Effective Assistance of Counsel By A Conflict of Interest**

Petitioner next contends that his Sixth and Fourteenth Amendment rights were violated by the trial court's denial, following a *Marsden* hearing, of his motion to substitute counsel because of a conflict of interest. *People v. Marsden*, 2 Cal. 3d 118 (1970). Under *Marsden*, the trial court must make an inquiry when a defendant seeks to discharge his counsel and asserts inadequate representation. *Marsden*, 2 Cal. 3d at 123-24. In *Bland v. Department of Corrections*, 20 F.3d 1469 (9th Cir. 1994), the Ninth Circuit held that "once a request for substitute counsel has occurred, inquiry is required." 20 F.3d at 1476 (citing *United States v. Robinson*, 913 F.2d 712, 716 (9th Cir. 1990)). In *Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000), the court overruled *Bland* to the extent the case applied an abuse of discretion standard instead of the correct unreasonable application standard of AEDPA. 218

F.3d at 1025. However, the Ninth Circuit affirmed that "it is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for [a motion for new counsel]." *Id.*

Petitioner asserts that his trial counsel, Mr. Camacho, refused to discuss, consider or present an argument regarding his own ineffective assistance as part of a motion for a new trial after Petitioner's conviction. This, Petitioner argues, posed a conflict of interest that violated his Sixth Amendment right to effective assistance of counsel and thus the trial court should not have denied Petitioner's request for new counsel.

Under *Bland* and *Schell*, it is clear that the conflict posed by a lawyer refusing to argue his own ineffective assistance of counsel could require substitution of counsel: "[A] motion to substitute appointed counsel based on allegations of an 'irreconcilable conflict' implicates the defendant's Sixth Amendment right to counsel. It follows that [Petitioner's] claim is properly considered in a habeas petition." *Schell*, 218 F.3d at 1023, citing *Bland*, 20 F.3d at 1475.

Here, the California Court of Appeal held that the trial court did not abuse its discretion when it denied Petitioner's request for new counsel. Specifically, the Court of Appeal found that Petitioner was given an adequate opportunity to express his concerns, and that counsel's performance was not defective. (*People v. Myers*, 2002 WL 1648407 (July 24, 2002) (unpublished)). At the *Marsden* hearing, the trial court allowed Petitioner to address the court and state his reasons for seeking relief. Petitioner explained that his counsel failed to call a defense witness who could have testified that the key found in Petitioner's bedroom was not used to open the shed.

Furthermore, Petitioner stated that defense counsel failed to counter the prosecution's suggestion that all of the pills found in the trailer contained ephedrine or pseudoephedrine.

The trial court fully allowed Petitioner to explain his grievances. The trial court inquired of defense counsel about his decisions and was told, among other things, that the defense witness at issue was not called for tactical reasons. After conducting the inquiry, the trial court denied Petitioner's *Marsden* motion. Because the trial court's inquiry at the *Marsden* hearing was thorough and proper, there was no constitutional error in declining to substitute counsel.

In any event, the failure of the trial court to adequately inquire into a defendant's dissatisfaction with counsel is not per se prejudicial. *Schell*, 218 F.3d at 1026. Instead, Petitioner must show that the failure to inquire resulted in a denial of effective assistance of counsel. *Id.* Here, Petitioner has not alleged the type of complete breakdown in communication or deterioration of the relationship alleged in *Schell*. *Id.* (protracted series of disagreements between Petitioner and trial counsel about how to combat the state's fingerprint evidence required hearing to determine constitutional implications). Furthermore, to the extent that Petitioner was unable to present all of his allegations of ineffective assistance of counsel at the *Marsden* hearing, he has subsequently been able to raise these issues before the California Court of Appeal and California Supreme Court in his habeas petitions, as well as before this Court. As will be discussed below, Petitioner has failed to allege any deficiencies in counsel's representation that rise to the level of ineffective assistance of counsel under the Sixth Amendment. The trial court

committed no constitutional error in declining to substitute counsel and Petitioner's assertions to the contrary are without merit.

**C. Ineffective Assistance of Counsel**

Petitioner alleges that his trial counsel provided ineffective assistance by failing to investigate, by cross-examining prosecution witnesses inadequately and by failing to present certain favorable defense evidence. In doing so, Petitioner requests an evidentiary hearing to demonstrate that these failures amounted to prejudicial ineffective assistance of counsel.

The Sixth Amendment guarantees the effective assistance of counsel. Claims of ineffective assistance are reviewed under the two-step analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must prove that his attorney's representation was "deficient," in that it fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687-88. Scrutiny of counsel's performance must be "highly deferential," and Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). In addition, Petitioner must show that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687, 694. This means that Petitioner must establish a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Woodford v. Visciotti*, 537 U.S. 19, 22 (2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 23. "Failure to show either deficient performance or prejudice is sufficient to defeat [Petitioner's] claim of ineffective assistance. Thus, the court need

not discuss both components of the test if [Petitioner] fails on either." *Anderson v. Calderon*, 232 F.3d 1053, 1084 (9th Cir. 2000) (citations omitted); *see also Strickland*, 466 U.S. at 697.

**1. Failure to Investigate**

Petitioner contends that his defense counsel, Mr. Camacho, was ineffective in failing to investigate: 1) whether a key found in Petitioner's bedroom actually unlocked the outside shed that contained methamphetamine manufacturing materials; 2) whether any third party fingerprints were found on the materials in the shed; and 3) whether hydrogen peroxide is part of the process of manufacturing methamphetamine. Petitioner alleges that investigation would have shown that the key did not unlock the shed; third party fingerprints were discovered on the manufacturing materials; and hydrogen peroxide cannot be used to manufacture methamphetamine consistent with the four-step manufacturing process outlined by the prosecution at trial.

A failure by trial counsel to conduct a reasonable investigation and present mitigating evidence may constitute ineffective assistance of counsel. *Rompilla v. Beard*,__ U.S. __, 125 S. Ct. 2456, 2005 U.S. LEXIS 4846 (2005); *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527 (2003); *Jennings v. Woodford*, 290 F.3d 1006, 1013-14 (9th Cir. 2002)(trial counsel's decisions must be reasonable and well-informed, and failure to gather evidence upon which to make such decisions was ineffective assistance). Additionally, the United States Court of Appeals for the Ninth Circuit has held that the failure to "consider alternate defenses constitutes deficient performance when the attorney neither conducts a reasonable investigation nor makes a showing of strategic reasons for failing to do so." *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002)(attorney's failure to speak with more than one

witness constituted ineffective assistance).

Here, Petitioner has not shown that counsel was deficient or that he was prejudiced. During the *Marsden* hearing, defense counsel indicated that he did not call a witness regarding the key for "tactical reasons." (RT at 1521-23). Although this is obviously not a detailed explanation, it indicates that defense counsel did investigate the key and did not wish to reveal the results of that investigation to the court. Moreover, Petitioner has not shown a reasonable likelihood that admission of the evidence would have produced a different result.

Deputy Arakawa testified that he used the key to open one of the two sheds next to the trailer. Methamphetamine and manufacturing supplies for the drug were found inside the shed. The shed was on the property where Petitioner resided. Also, Petitioner had purchased hypophosphorus acid and two flasks, items commonly used in manufacturing methamphetamine. Thus, there was overwhelming evidence connecting Petitioner to the shed, even if the key at issue was not used to open the shed. Furthermore, Petitioner's version of events, as well as his belief about the keys, was presented to the jury through his own testimony. Petitioner testified that he saw officers yank the door to the shed open, without using a key, and that he never owned a key ring like the officers described finding in his room. (TR 1224-25). The jury heard this testimony, and was able to evaluate it in light of all the other evidence presented.

Next, the failure to investigate the presence of other fingerprints did not prejudice Petitioner. First, there is no concrete evidence that other fingerprints were present on the chemical containers. The allegation that other fingerprints might have been found is totally speculative. Moreover, the presence of other

fingerprints would have done nothing to undermine the evidence that methamphetamine and manufacturing materials were found at Petitioner's residence and the proof that Petitioner had purchased methamphetamine manufacturing materials. The outcome of the case against Petitioner would not have been altered even if the evidence showed that someone else touched the supplies. Indeed, other fingerprints were likely to be present, such as those of a store clerk or of co-defendant Boles.

Finally, defense counsel's investigation into the use of hydrogen peroxide would not have produced a different result in the case. Given the overwhelming weight of the other evidence against Petitioner, he was not prejudiced by defense counsel's failure to investigate whether hydrogen peroxide was actually a part of the methamphetamine manufacturing process. Additionally, Petitioner was able to present his innocent explanation (medicinal purposes) for the presence of the hydrogen peroxide during in his own testimony. (TR at 1233).

Thus, Petitioner's claim that his trial counsel provided ineffective assistance by failing to investigate evidence is without merit. No evidentiary hearing is required to resolve this issue.

**2. Failure to Adequately Cross-Examine Witnesses**

Petitioner next claims that Mr. Camacho was ineffective by failing to impeach Deputy Sheriffs Bishop and Arakawa with their prior inconsistent statements regarding the number of keys found in Petitioner's bedroom; failing to impeach Special Agent Cordray with his prior inconsistent testimony that there was no evidence that hydrogen peroxide was used to manufacture methamphetamine; and failing to elicit Agent Cordray's previous corroborative statement that he observed boxes containing personal property items in Petitioner's bedroom closet.

Petitioner asserts that because his own testimony was impeached and uncorroborated, the failure to impeach prosecution witness and corroborate Petitioner's testimony violated his Sixth Amendment rights.

The decision as to whether and how to challenge the testimony of a particular witness is a tactical decision which must be accorded great deference on habeas review. *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000). Indeed, a purely tactical decision ordinarily cannot form the basis of a claim of ineffective assistance of counsel. *Mancuso v. Olivarez*, 292 F.3d 939 (9th Cir. 2002); *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984). Furthermore, a habeas petitioner pleading ineffective assistance of counsel must affirmatively prove prejudice. *Fields v. Woodford*, 309 F.3d 1095, 1107-08 (9th Cir. 2002). "This requires showing more than the possibility that he was prejudiced by counsel's errors; rather, he must demonstrate that the errors *actually* prejudiced him." *Id.* Thus, where a petitioner claims that counsel failed to introduce impeachment evidence, he must demonstrate that, had the impeachment evidence been presented to the jury, there is a reasonable probability that the outcome of the trial would have been different. *United States v. Holmes*, 229 F.3d 782, 789-90 (9th Cir. 2000), *cert. denied*, 531 U.S. 1175, 121 S.Ct. 1148, 148 L.Ed.2d 1011 (2001).

Here, Petitioner has failed to meet this burden. The allegedly prior inconsistent statements regarding the number of keys found in Petitioner's bedroom and the use of hydrogen peroxide are not sufficient to support a reasonable probability that the outcome of the trial would have been different had they been elicited. Agent Cordray's previous statement that he observed boxes containing personal property items in Petitioner's bedroom closet would have corroborated

Petitioner's claim that he was moving, but this was not a fact central to the case against him. Even if he were moving, the evidence demonstrated that Petitioner had been engaged in manufacturing methamphetamine in the trailer. Petitioner has failed to meet his burden of affirmatively proving prejudice.

**3. Failure to Present Favorable Evidence**

Finally, Petitioner asserts that his right to effective assistance of counsel was violated when Mr. Camacho failed to introduce photographic evidence that corroborated Petitioner's testimony that he saw deputy sheriffs force entry into the outside shed; failed to introduce testimonial evidence that Petitioner routinely used hydrogen peroxide to clean popped cysts; failed to introduce documentary evidence that corroborated his testimony that he was preparing to move and had packed personal property items in several boxes reinforced with duct tape; and failed to subpoena Norma Charlene DiMassa. Again, Petitioner stresses that corroborating his own testimony was crucial to his defense, because otherwise it was only his unsubstantiated word against the prosecution's strong case.

As previously stated, a failure by trial counsel to conduct a reasonable investigation and present mitigating evidence may constitute ineffective assistance of counsel. *Rompilla*, 125 S. Ct. 2456. In addition to showing defense counsel's failure to present favorable evidence, Petitioner must show that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687, 694.

As with his other claims of ineffective assistance, Petitioner has failed to show deficient performance or prejudice with respect to the failure to present favorable evidence. First, defense counsel did elicit evidence to explain the presence of hydrogen peroxide, duct tape

and shed during his direct examination of Petitioner. Petitioner testified that he used the hydrogen peroxide in his room for cysts on his legs and that he had the duct tape for moving boxes that he was packing his clothing in. He further testified that he did not have keys to the shed. Thus, some evidence on these points was presented to the jury for their consideration. (TR at 1228-33)

With regard to the photographic evidence of the shed, the Court has reviewed the evidence submitted by Petitioner and notes that the photographs allegedly showing forced entry were taken a month after Petitioner's arrest. (Exhibit 2, EXH. F514). Thus, the photos have little if any probative value.

With respect to Norma Charlene DiMassa, Petitioner provides no details of how this witness would have testified and how the information obtained from her would have changed the outcome of the case. Furthermore, Petitioner failed to provide an affidavit by DiMassa, further weakening his ability to prove ineffective assistance of counsel. *Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000). Thus, Petitioner has not demonstrated that counsel acted deficiently or that Petitioner was prejudiced by trial counsel's actions.

As Petitioner has failed to show that defense counsel's performance was deficient, the state court's determination that counsel's assistance was not ineffective was not an unreasonable application of federal law nor an unreasonable determination of the facts. No relief is warranted.

**V. Petitioner's Conviction On Both The Lesser Included And Substantive Offenses Was Not Unconstitutional**

Finally, Petitioner claims that his conviction of possession of

ephedrine with intent to manufacture methamphetamine violated his constitutional rights because it is a lesser included offense of manufacture of methamphetamine. Petitioner argues that ephedrine is a necessary ingredient to the manufacture of methamphetamine, and that his conviction for manufacture was based, at least in part, upon the evidence of his possession of ephedrine. Petitioner highlights the prosecutor's statements in closing argument that the pseudoephedrine tablets found at Petitioner's residence show an intent to manufacture methamphetamine. (RT at 1292).

The Double Jeopardy Clause protects against multiple punishments for the same offense. *Jones v. Thomas*, 491 U.S. 376, 381 (1989); *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Whalen v. United States*, 445 U.S. 684, 692 (1980) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (holding that a single act or transaction may form the basis for the prosecution of two distinct statutory offenses whenever conviction for each offense requires the proof of a fact that the other does not)).

California Health and Safety Code Section 11383 (c)(1), possession of ephedrine, provides in pertinent part: "Any person who, with intent to manufacture methamphetamine . . . possesses ephedrine or pseudoephedrine . . . is guilt of a felony."

Health and Safety Code Section 11379.6(a), manufacture of methamphetamine, provides:

Except as otherwise provided by law, every person who

manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance specified in Section 11054, 11055, 11056, 11057, or 11058 shall be punished by imprisonment in the state prison for three, five, or seven years...

A reading of these code provisions indicates that one could commit the crime of manufacturing methamphetamine without also committing the crime of possession of ephedrine with intent to manufacture. The California Court of Appeal noted in a similar case that "it would be possible to be guilty of manufacturing PCP without also being guilty of possessing piperidene and cyclohexanone, because a person could aid and abet the manufacture without having actual or constructive possession of the necessary ingredients." *People v. Goodall*, 131 Cal.App.3d 129, 147 (1982). This reasoning is also persuasive here. A person could aid and abet the manufacture of methamphetamine without having actual or constructive possession of the necessary ingredients. In addition, one could have completed the manufacture of a quantity of methamphetamine and possess ephedrine with the intent to manufacture another batch of methamphetamine. The evidence suggests such a scenario here. Or, a person could participate in the manufacture of methamphetamine at a stage in the manufacturing process where ephedrine no longer exists, but has been transformed. Thus, Petitioner is not suffering multiple punishments for the same offense. *Jones v. Thomas*, 491 U.S. 376, 381 (1989). He was convicted of separate, distinct offenses, and consequently his claim must fail.

\\

**IV. Conclusion**

For the reasons stated above, the petition for writ of habeas corpus should be DENIED.

Dated: November 7, 2005

Marc L. Goldman
United States Magistrate Judge